Archil Loyer v. Commissioner.
Loyer v. Commissioner
Docket No. 27155.
United States Tax Court
1951 Tax Ct. Memo LEXIS 249; 10 T.C.M. (CCH) 406; T.C.M. (RIA) 51121; April 30, 1951
H. Kennedy McCook, Esq., for the petitioner. William R. Bagby, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined a deficiency of $4,949.99 in petitioner's income tax liability for the calendar year 1947. The sole issue presented is whether the respondent erred in determining that the fair market value of a purchaser's secured promissory note and of the petitioner's proportionate interest therein was equal to the face amount thereof, namely, $300,000 for the note and $59,400 for petitioner's interest, for the purpose of determining the gain realized by petitioner upon a sale of stock in the taxable year. Findings of Fact Petitioner is an individual residing in Cleveland Heights, Ohio. His tax return for the year involved was filed with *250 the collector of internal revenue for the 18th district of Ohio. On March 1, 1927, and at a cost of $110,484, the petitioner acquired 396 shares of common stock of the FitzSimons Steel Company, of Youngstown, Ohio, (hereinafter referred to as the Steel Company). On April 1, 1947, the 2,000 outstanding shares of capital stock of Steel Company were purchased from the holders thereof by All American Industries, Inc., a Delaware corporation, which was a holding company and which on November 12, 1947, changed its name to American Steel and Pump Company. The change of name is immaterial and that company will be hereinafter referred to as American. The consideration was $450 per share, or a total of $900,000, of which $600,000 was paid in cash. The remainder of the purchase price was paid by a promissory note, dated March 31, 1947, executed by American, in the principal sum of $300,000, payable in three equal installments of $100,000 each, on December 31 of 1948, 1949, and 1950, and bore interest at the rate of five per cent per annum. The note was secured by a mortgage deed and chattel mortgage of even date which constituted a first lien on all the land, buildings, machinery and equipment *251 owned by the Steel Company. The mortgage instrument provided, inter alia, that the grantor, as additional security, would maintain fire insurance to the full insurable value of the mortgaged property for the protection of the interest therein of the mortgagee. As of April 7, 1947 a mortgagee clause was made a part of a fire insurance policy in the amount of $500,000 for the term of three years from October 1945. The amount of the insurance coverage was increased to $635,000 on May 22, 1947 and to $735,000 on June 5, 1947. Included in the two thousand shares sold to American were the 396 shares owned by the petitioner. His total selling price was $178,200 which he received in the form of cash in the sum of $118,800, and his proportionate share in the sum of $59,400 of the face value of American's promissory note. On April 2, 1947, the petitioner and other former stockholders of Steel Company and then owners of American's note for $300,000 entered into a trust agreement which provided, inter alia, that the principal and interest payments on the note should be made to the Union National Bank of Youngstown, Ohio, as trustee, for distribution to them in proportion to their interest *252 in the note. Prior to the due date of the first $100,000 payment on American's $300,000 note and on August 20, 1948, the trustee with the consent and acting on behalf of the holders of interest in that note, executed an extension agreement with American, modifying the latter's obligation under the note only with respect to the time payments thereon would fall due. Under that extension agreement it was provided that if American paid $100,000 on the note on or before September 30, 1948, then the remainder of $200,000 would be payable at the rate of $50,000 per year on September 30 for the years 1949 to 1952, inclusive. By agreement of all the parties concerned further extensions of time for payment were granted to American which during the latter part of 1948 paid the first $100,000 due on the note and thereafter made timely payments pursuant to the extension agreements. As of October 1950 American had made timely payments totalling approximately $200,000, leaving a balance of approximately $100,000 due on the note, so that as of that time a total of $800,000 had been paid on the purchase price of $900,000 for the Steel Company stock. In his calendar year return for 1947 the petitioner *253 reported a long-term capital gain of $47,916 limited to a taxable gain of 50 per cent, or $23,958, from the sale of his 396 shares of Steel Company stock. In computing that gain petitioner used a selling price in the amount of $158,400 represented by the sum of $118,800 cash received plus the sum of $39,600 as the fair market value of his interest of $59,400 in the face amount of American's $300,000 note. In asserting the deficiency involved herein, the Commissioner determined that the fair market value of petitioner's interest in American's note was $59,400 when received at the time of the sale and he increased the petitioner's actual capital gain by $19,800 and the taxable gain by 50 per cent thereof, or $9,900. The fair market value of American's note for $300,000 on April 1, 1947 was its face value. Opinion The issue herein presents a question of fact, namely, the fair market value of American's $300,000 promissory note and of petitioner's interest therein as of the time received upon the consummation of the sale by petitioner and others of the outstanding shares of stock of Steel Company, for the purpose of determining the amount of the petitioner's long-term capital gain *254 realized in 1947. Petitioner relies mainly upon the testimony of two witnesses, presented as experts, to sustain his contention that the fair market value of his interest in the note was only two-thirds of the face value thereof, namely, $39,600, as reported on his return. Both witnesses had many years of experience in their respective businesses, the first as a dealer in over-the-counter securities and the second as a licensed real estate broker and dealer in industrial property, investment property, and real estate investments. As to the market value of American's $300,000 note on April 1, 1947, the first witness was of the opinion that it was about 70 per cent of face value and the second witness was of the opinion that it was 50 or 60 cents on the dollar. In our opinion, the testimony of petitioner's witnesses has little probative value in the light of the facts established in this proceeding and of petitioner's failure to prove certain essential facts as a part of a proper foundation to support the opinion evidence. Here American, the purchaser of the stock, was the primary obligor on the promissory note involved and there is no evidence of record as to its financial ability *255 to pay off the note as of the crucial date, April 1, 1947. In regard to that matter we have only the evidence of subsequent events that American made timely payments pursuant to certain extension agreements of the parties. On the other hand, the record establishes that the note was amply secured so that aside from the ability of the maker of the note to pay there was every reason to expect, on April 1, 1947, that the note would be timely paid in full. The sale of the stock for $900,000 on April 1, 1947 established the fair market value thereof and of the assets of Steel Company back of that stock. The sellers of the stock received $600,000 in cash and the $300,000 note for the balance of the purchase price was secured by a mortgage deed and chattel mortgage constituting a first lien on all the land, buildings, machinery, and equipment of Steel Company. On that state of facts, we conclude that the fair market value of the security far exceeded the face amount of the note and further that the fair market value of the note was equal to its face value. Section 111, Internal Revenue Code, provides in subsection (a) that the gain from the sale of property "shall *256 be the excess of the amount realized therefrom over the adjusted basis" and in subsection (b) that the amount realized "shall be the sum of any money received plus the fair market value" of any property received. On the facts of record, we find no error in the respondent's determination. See Whitlow v. Commissioner, 82 Fed. (2d) 569. Decision will be entered for the respondent.